# Richmond

## JENNIFER SNEED, an infant, etc., et al. v. JOHN E. SNEED, Administrator, etc.

June 9, 1978

Record No. 770281

Present: All the Justices.

*Carl E. McAfee (Cline, McAfee, Adkins & Gillenwater,* on brief) for plaintiff in error.

*Leslie M. Mullins (Mullins, Winston & Roberson,* on brief) for defendant in error.

PER CURIAM.

On January 17, 1974, near Big Stone Gap in Wise County, a station wagon being operated on U.S. Route 23 by Carol D. Sneed left the highway, went over an embankment and overturned. The driver was killed and her two infant children, passengers in the vehicle, were injured. In subsequent damage suits, consolidated for trial, brought by Jennifer Sneed and David Sneed against the administrator of their mother's estate, the trial court set aside jury verdicts in favor of the children in the amounts of $45,000 and $20,000 respectively.

This appeal is from a joint judgment order entered by the court below in February of 1977 in favor of the defendant in both cases. The sole issue is whether a *prima facie* case of negligence was established against defendant's decedent.

The accident occurred about 2:30 p.m. on a clear day. The two-lane, hard-surfaced, north-south roadway was dry and the speed limit was 55 miles per hour. At the scene, the road was 19 feet 10 inches wide and "a little bumpy".

State Trooper J. B. Buchanan, not an eyewitness, testified that his investigation revealed that as Mrs. Sneed was driving northbound downhill on a slight curve to her left, the right wheels of the vehicle "dropped off the paved portion" to a rough shoulder on the right, four to five inches below the hard surface. This difference in levels extended for a distance of 30 to 40 yards. The officer stated that when the driver "cut back to the hardtop, she overcorrected, swerved to the left of the centerline and swerved back to the right, over the embankment where she crashed." From the point where it "dropped off" to the shoulder, the vehicle travelled 210 feet to the top of the embankment and then went 96 feet down the steep hill before coming to rest on its side.

The officer further testified that no other vehicle was "involved", that there was no indication the driver had been drinking intoxicants, that he could not determine what caused the vehicle to initially "drop off" onto the shoulder, and that he could not give any reason why the accident happened.

Plaintiff David Sneed, who was seven years of age at the time of

the accident, testified that he was sitting on the front seat of the vehicle. He remembered only that before the crash his mother was attempting to turn the steering wheel "and it wouldn't turn" and that "all she said" was: "Hang on."

The children's father testified that his wife was thoroughly familiar with the scene of the accident, having travelled over the road on many prior occasions. He stated that she was a "border-line" diabetic.

An expert in mechanical failure analysis testified that upon his examination of the entire vehicle after the accident, he found no mechanical defects which existed before the accident. He determined that a "disengagement" which he discovered in the steering apparatus could have only occurred upon impact and did not exist "prior to impact."

■ Relying principally on *Hackley* v. *Robey*, 170 Va. 55, 195 S.E. 689 (1938), the plaintiffs argue there was "ample evidence" of negligence on the part of the defendant's decedent, inasmuch as the possibility of mechanial failure in the vehicle had been excluded. They contend that because Mrs. Sneed was familiar with the road at the scene, she knew or should have known of the "drop off" to the right shoulder. They say that due to inattention or failure to keep a proper lookout, she negligently drove the vehicle onto the shoulder, thereafter losing control of it and causing the resulting injuries. We do not agree with the plaintiffs' contentions.

Axiomatic are the following principles. Negligence cannot be presumed from the mere happening of an accident. The burden is on the plaintiff to produce evidence of preponderating weight from which the trier of fact can find that the defendant was guilty of negligence which was a proximate cause of the accident. The evidence must prove more than a probability of negligence. The plaintiff must show why and how the accident happened. And if the cause of the accident is left to conjecture, guess, or random judgment, the plaintiff cannot recover.

■ In this case, the evidence fails to disclose why the right wheels on the vehicle left the hard surface of the roadway initially, and dropped to the depressed and rough shoulder. There is no evidence that, prior to that moment, the vehicle had been travelling at an unreasonable speed or that Mrs. Sneed was inattentive or that she did not have the vehicle under proper control. To be

reasonably inferred from this evidence is either that she was negligent in driving the vehicle onto the shoulder or that the vehicle left the roadway for some non-negligent reason, such as the driver's sudden illness. Such circumstantial evidence is insufficient, however, to establish a *prima facie* case of negligence because it must show more than that the accident resulted from one of two causes, for one of which the defendant is responsible and for the other of which she is not.

■ From the evidence in general and David's testimony in particular, it appears likely that after the right wheels dropped onto the shoulder for some unknown reason, Mrs. Sneed attempted to bring the vehicle back onto the highway but was momentarily prevented from doing so either because the steering column became disengaged during the impact caused by the "dropoff", or because the right wheels "hung" along the four-to-five-inch thick edge of the hard surfaced roadway. But no negligence can be attributed to her during this period because she was acting *in extremis* and the vehicle was apparently out of control.

*Hackley* v. *Robey, supra,* is inapposite. In that case, a vehicle was being driven at night into a constricted passageway where Broad Street in the City of Richmond narrowed to pass over a bridge. The car ran up over an eight-inch curb, sideswiped a lamp post on the sidewalk, turned completely over, skidded along the street and across the bridge, and came to a stop 189 feet from the first point of collision. Based on the evidence in that case, we held that the question of the driver's gross negligence was for the jury because the physical evidence showed, among other things, that the car was being operated "at a very high rate of speed". 170 Va. at 62, 195 S.E. at 691. No such evidence of excessive speed is present here.

For these reasons, we hold that the trial court was correct in setting aside the verdicts in these cases. Consequently, the final judgment in favor of the defendant will be

*Affirmed.*